TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
GREGG E. MARMARO (Cal. Bar No. Pending)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8500
     Facsimile: (213) 894-0141
     E-mail:    gregg.marmaro@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-472-JAK |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT IAN BRADLEY GALLAHER |
| v. | |
| IAN BRADLEY GALLAHER, | Hearing Date: May 20, 2021<br>Hearing Time: 8:30 a.m.<br>Location:    Courtroom of the<br>             Hon. John A.<br>             Kronstadt |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney and Assistant United States Attorney Gregg E. Marmaro, hereby files its Sentencing Position for defendant IAN BRADLEY GALLAHER.

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the Presentence Report (Dkt. 66 ("PSR")) and sentencing recommendation letter (Dkt. 65 ("Sent. Rec. Ltr.")), filed by the United States Probation and Pretrial Service Office ("USPO") on April 15, 2021, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 6, 2021                    Respectfully submitted,

                                      TRACY L. WILKISON
                                      Acting United States Attorney

                                      BRANDON D. FOX
                                      Assistant United States Attorney
                                      Chief, Criminal Division


                                           /s/
                                      ─────────────────────────────
                                      GREGG E. MARMARO
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Before the Court for sentencing is defendant IAN BRADLEY GALLAHER, who pleaded guilty to count one of the indictment: assault on a person assisting federal officers and employees resulting in bodily injury, in violation of 18 U.S.C. §§ 111(a)(1), (b).  (Dkt. 59 ("Plea Agreement"); Dkt. 64 (Entry of Guilty Plea).)  In a written plea agreement, defendant admitted that on April 1, 2019, he forcibly assaulted victim J.N., a Protective Security Officer ("PSO") assisting officers and employees of the United States Social Security Administration (the "SSA") in the Torrance, California field office.  (Plea Agreement at ¶ 9.)  The government agreed to recommend a four-level downward variance at sentencing based on the factors set forth 18 U.S.C. § 3553(a), and to seek a sentence of imprisonment no higher than the low-end of the applicable Sentencing Guidelines range, so long as the offense level used by the Court to determine that range is nine or higher.  (Id. at ¶¶ 3(e), (f)).

The USPO calculated a total adjusted offense level of 13 and a Criminal History Category of III, resulting in a Guidelines range of 18-24 months' imprisonment.  (PSR ¶ 27; PSR ¶ 35.)  The USPO recommended a low-end sentence of 18 months' imprisonment.  (Sent. Rec. Ltr. 1, 4-5.)

The government agrees with the USPO's calculations but respectfully requests that the Court vary downward by four levels and impose a sentence of eight months' imprisonment.  The proposed sentence would accord with the history and characteristics of the defendant, specifically, defendant's mental health challenges.  The government also requests that the Court impose a three-year term of

supervised release on the terms and conditions recommended by the USPO, with the added conditions that defendant abide by any restraining and protective orders issued against him and that he not contact the individuals listed in the government's concurrently filed under seal filing, and a $100 special assessment.[1]

## II. OFFENSE CONDUCT

In the written plea agreement, defendant admitted that on April 2, 2019, he intentionally and forcibly assaulted victim J.N. while J.N. was engaged in the performance of his official duties as a PSO at the SSA Torrance field office, resulting in the infliction of bodily injury to J.N. (Plea Agreement ¶ 9; PSR ¶¶ 10-13.) Specifically, as defendant was being escorted off of SSA property for disruptive behavior, he directed racial slurs at victim J.N. and other PSOs; then, as two PSOs attempted to detain him in handcuffs, defendant grabbed and squeezed victim J.N.'s genitals, causing significant physical pain. (Id.) During this entire episode, defendant directed numerous racial slurs at the PSOs, and also twice threatened to "put a round" in victim J.N.'s head. (Id.; PSR ¶¶ 12-13.)

## III. SENTENCING GUIDELINES CALCULATIONS

### A. Offense Level

Starting with a base offense level of ten, the USPO added three levels because the offense involved physical contact (as defendant grabbed victim J.N.'s genitals and scraped another PSO's wrist while defendant resisted being detained), and two levels because the victim

---

[1] At the time of sentencing, the government also intends to dismiss the remaining count as against defendant, consistent with its obligations in the plea agreement. (Plea Agreement ¶ 3(c).)

2

sustained bodily injury (victim J.N. sustained injury to his genitals, and the other PSO sustained a wrist injury).  (PSR ¶ 18-20, 24); U.S.S.G. §§ 2A2.4(a), (b)(1), (b)(2).  After adjusting for acceptance of responsibility, the USPO calculated a total offense level of 13.  (PSR ¶ 27.)  The government agrees with the offense level as calculated by the PSR, consistent with the stipulated sentencing factors in the plea agreement.  (Plea Agreement ¶ 11.)

**B. Criminal History**

The PSR calculated three criminal history points from two prior felony convictions:

- Vandalism (felony), in violation of California Penal Code Section 594(a), on December 17, 2017, for which defendant was sentenced to 36 months' probation.  (PSR ¶ 31.)  Per the PSR, defendant caused damage to a parking garage gate after he tried to leave the garage without paying.  (Id.)

- Stalking (felony), in violation of California Penal Code Section 646.9(b), on January 22, 2019, for which he was sentenced to five years' probation and 364 days' jail.  (PSR ¶ 32.)  Per the PSR, defendant violated a restraining order by approaching the workplace of his ex-wife.  (Id.)

The PSR also documents three arrests since 2016.  First, in March 2016, defendant was arrested in Hawaii for harassment, which was dismissed without prejudice.  (PSR ¶ 39.)  Second, defendant was arrested for disorderly conduct in 2017.  (PSR ¶ 36.)  Third, in February 2019, approximately two months before the charged conduct in this case, defendant was arrested for Battery, in violation of California Penal Code Section 242, in which he appears to have engaged in similar conduct -- making derogatory statements towards

the victim, engaging in combative behavior, and making physical contact with the victim. (PSR ¶ 37.)

The PSR added two points because he committed the instant offense while under a criminal justice sentence, resulting in five criminal history points, and placing defendant in Category III. (PSR ¶ 34-35.) The government agrees with this calculation.

### C. Sentencing Guidelines Range

Based on an offense level of 13 and a Criminal History Category of III, the applicable Guidelines range is 18-24 months' imprisonment. (PSR ¶ 85.)

## IV. GOVERNMENT'S SENTENCING POSITION

The government believes that a sentence of eight months' imprisonment and three years of supervised release under stringent terms and conditions is appropriate here. The government's recommended sentence reflects a four-level downward variance from the low end of the Guidelines range, based on the factors set forth in 18 U.S.C. § 3553(a).

A downward variance would account for the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). As the PSR documents, defendant served as a watercraft engineer for the U.S. Army from 2013-2015. (PSR ¶ 72.) After defendant was honorably discharged (and received multiple commendations), he returned to Los Angeles and lived as a transient, experiencing homelessness and housing instability. (PSR ¶¶ 47, 49, 51, 71-75.) Further, defendant was deemed to suffer from 80% disability from the VA, and he appears to have been suffering from mental health challenges at the time of his offense in April 2019. (PSR ¶¶ 56, 75.) In August of 2019, a judge in Los Angeles Superior Court deemed defendant to be mentally

4

incompetent to stand trial on state stalking charges and transferred him to a state hospital to restore his competency. (Id.)[2] Further, records from the Department of Veterans Affairs ("VA"), recounted in the PSR, also reflect defendant's history of mental health challenges. (PSR ¶ 57.) While defendant was released on bond, he received treatment from a psychiatrist at the West LA VA Medical Center. (Id.) The psychiatrist, who saw defendant seven times since January 2020, diagnosed defendant with schizotypal personality traits, social anxiety disorder, and severe cannabis use disorder. (Id.) The psychiatrist explained that defendant's use of cannabis caused delusions and hallucinations and exacerbated his pre-existing schizotypal personality disorder. (Id.) Per the psychiatrist, defendant's behavior also improved substantially while in treatment, suggesting that if he continues to avoid marijuana and remain in treatment, the hallucinations and delusions will not return. (Id.) Additionally, in October of 2020, defendant was admitted into a hospital on a 5150 behavioral hold because he had threatened others with a glass bottle. (PSR ¶ 58.) He was thereafter diagnosed with schizophrenia, and the PSR, citing medical records, reflects that defendant remains isolative, has grandiose delusions, believes he has a high position in the music industry, continues to minimize his symptoms, and was disheveled, argumentative, anxious, hyper-verbal,

---

[2] There has been no issue raised regarding defendant's competency in this case. Indeed, defendant has appeared numerous times before this Court, and the Court has found defendant to be in full possession of his faculties. For example, at the Change of Plea Hearing, the Court found that defendant's plea was "made freely, intelligently and voluntarily, and with a full understanding of the nature of the charges, the consequences of the plea and of defendant's Constitutional rights." (Dkt. 64 (Criminal Minutes).) The Court accepted the plea and ordered that it be entered. (Id.)

and verbally threatening. (PSR ¶ 59.) The government's proposed sentence thus accounts for defendant's documented history and circumstances of mental health challenges.

Nevertheless, a sentence of eight months' imprisonment is necessary to effectuate the goals of sentencing, including the need for the sentence to reflect the seriousness of the offense, provide just punishment, and protect the public from defendant's future crimes. Defendant forcibly assaulted victim J.N. and caused him significant physical pain. Defendant's behavior that day was verbally and physically abusive, including numerous racial epithets directed at the PSOs. The recommended sentence is also justified by defendant's recidivism -- as evidenced by his criminal history, including for similar conduct underlying his conviction in this case -- and by the need to deter him from committing similar crimes in the future. Indeed, during his supervision in this case, defendant stalked two victims in the Los Angeles area, causing one of the victims to file a restraining order against him, and he also continued to harass another victim, who has an active restraining order against him.[3]

Finally, three years of supervised release is warranted. During supervision, as proposed by the USPO, defendant would participate in mental health treatment, and he may be placed in a residential drug treatment program. See Sent. Rec. Ltr. at 2, 5-6. The residential program and treatment would provide defendant with needed medical care and correctional treatment. See 18 U.S.C. § 3553(a)(2)(D). The

---

[3] For additional information regarding the victims, the government respectfully directs the Court to its concurrently filed under seal filing.

6

government requests that this Court add, as a condition of his supervised release, that defendant abide by any restraining and/or protective orders issued against him by any federal, state, or local jurisdiction.  As the USPO stated, defendant has a pattern of aggressive or stalking behavior, and he has a history of violating restraining orders against him.  (See Sent. Rec. Ltr. at 5; PSR ¶¶ 32, 50.)  Adding this condition will allow this Court to protect the public from defendant, should he continue to engage in such behavior. Although Second Amended General Order 20-04, which sets forth standard conditions of supervised release, requires defendant not to commit another federal, state, or local crime (Condition No. 1), the government's proposed condition would avoid any uncertainty and would make clear that defendant must abide by the restraining orders issued against him.  The government also requests that the Court impose a no-contact order for the individuals listed in the government's under seal filing.[4]  In sum, stringent conditions of supervised release are warranted here, given defendant's behavior as discussed above, as well as his conduct towards the victims.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to a term of eight month's imprisonment, a three-year period of supervised release on the terms and conditions recommended by the USPO and the government's proposed additional conditions, and a $100 special assessment.

---

[4] The government's understanding is that the USPO could enforce such a condition with GPS monitoring for a period of time while defendant is on supervised release in this case.